USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/13/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GERMAIN PETIT,

                              Plaintiff,

            -against-

EPIQ EDISCOVERY SOLUTIONS, INC.,
LISA EDGEWORTH, ANN MARIE CARLSON,
and STACEY SACKS,

                              Defendants.

---

24-cv-9880 (MKV)

**OPINION AND ORDER
GRANTING MOTION TO
COMPEL ARBITRATION AND
STAY ACTION**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Germain Petit, appearing *pro se* and proceeding *in forma pauperis*, brings this action alleging discrimination, harassment, retaliation, failure to promote, and wrongful termination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq*. ("ADEA"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq*. ("NYSHRL"), and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 *et seq*. ("NYCHRL"), against his former employer Epiq eDiscovery Solutions, Inc. ("Epiq") and its employees Lisa Edgeworth, Ann Marie Carlson, and Stacey Sacks (collectively, "Defendants"). *See* Amended Complaint ("Am. Compl.") ¶¶ 1-7, 134 [ECF No. 21]. Before the Court is Defendants' motion to compel arbitration and stay this action under the Federal Arbitration Act, 9 U.S.C. §§ 3 *et seq*. ("FAA") [ECF No. 40]. In support, Defendants have filed a memorandum of law ("Mem.") [ECF No. 41] and a Declaration of Kelly Cardin, Esq., ("Cardin Decl.") with attached exhibits [ECF No. 42]. Plaintiff filed an opposition ("Opp'n"), [ECF No. 44], and Defendants have filed a reply

1

("Reply"), [ECF No. 46].  For the reasons discussed below, Defendants' motion is GRANTED and this action is STAYED pending arbitration of Plaintiff's claims.

## BACKGROUND

Epiq is a "global technology-enabled legal services" provider.  Am. Compl. ¶ 48.  Plaintiff commenced employment with Epiq as a temporary employee on January 6, 2014, but transitioned to full-time employee status on November 5, 2015.  Am. Compl. ¶ 10.  On November 1, 2015, Plaintiff executed Epiq's "Employment, Confidential Information, Invention Assignment and Arbitration Agreement."  *See* Cardin Decl., Ex. A ("Arb. Agreement") [ECF No. 42-1].  The arbitration clause in the agreement covers the resolution of "ALL DISPUTES RELATING TO ALL ASPECTS OF THE EMPLOYER/EMPLOYEE RELATIONSHIP" and "ALL CLAIMS FOR VIOLATION OF ANY FEDERAL, STATE OR MUNICIPAL STATUTE."  Arb. Agreement at 4, § 20.  Epiq did not sign the agreement.  Arb. Agreement at 5; *See* Opp'n at 4.

Plaintiff worked for Epiq until his termination on August 12, 2022.  Am. Compl. ¶ 127.  On January 18, 2022, Plaintiff filed a charge of employment discrimination against Defendants with the Law Enforcement Bureau of the New York City Commission on Human Rights ("NYCCHR") and the United States Equal Employment Opportunity Commission ("EEOC").  Am. Compl. ¶ 28.  On August 31, 2024, Plaintiff received formal "Administrative Closure Notice" from the NYCCHR, and on November 9, 2024, Plaintiff received "Notice of Right to Sue" from the EEOC.  Am. Compl. ¶¶ 39-42.

Plaintiff filed his initial complaint on December 19, 2024 [ECF No. 1], and after the Court denied Plaintiff's motion to proceed anonymously, Plaintiff filed the operative amended complaint on September 29, 2025.  [ECF No. 21].  Before the Court is Defendants' fully briefed motion to compel arbitration and stay the action pending arbitration.  *See* [ECF No. 40].

**LEGAL STANDARD**

The FAA "is an expression of a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Ross v. American Exp. Co.*, 547 F.3d 137, 142 (2d Cir. 2008) (citation modified). Section 2 of the FAA provides that arbitration provisions in written contracts "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Section 4 permits a party to petition a federal district court "for an order directing arbitration proceed in the manner provided for" in an arbitration agreement. 9 U.S.C. § 4. The FAA "requires the federal courts to enforce arbitration agreements, reflecting Congress' recognition that arbitration is to be encouraged as a means of reducing the costs and delays associated with litigation." *Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003) (citation modified); *see also Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022) ("Where parties are bound to an arbitration agreement, courts are instructed to favor arbitration as a form of dispute resolution.").

Before compelling arbitration, a district court must determine two threshold issues: (1) whether the parties agreed to arbitrate, and (2) the scope of that agreement. *See In re American Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). On the first threshold issue, the Second Circuit has instructed district courts to resolve "agreement-formation questions" by "applying the law of the state at issue." *Barrows*, 36 F.4th at 50; *see also Bell v. Cendant Corp.,* 293 F.3d 563, 566 (2d Cir. 2002) ("[T]he ultimate question of whether the parties agreed to arbitrate is determined by state law."). Once the existence of an agreement to arbitrate is established, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000); *see also Kurmangaliyev v. Verizon Wireless Servs., LLC*, No. 25-CV-3749, 2026 WL 1266383, at

3

*7 (E.D.N.Y. May 8, 2026) (citing *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 102 (2d Cir. 2022) (citation modified).

On the second threshold issue, "the court first asks, whether a court or an arbitrator should decide if the dispute falls within the scope of the agreement to arbitrate." *Ross v. Finzer*, No. 25-CV-1179 (DEH) (VF), 2025 WL 2860070, at *2 (S.D.N.Y. Oct. 8, 2025) (quoting *Citigroup Inc. v. Sayeg*, No. 21-CV-10413 (JPC), 2022 WL 179203, at *5 (S.D.N.Y. Jan. 20, 2022)); *see also In re American Exp. Fin. Advisors Sec. Litig.*, 672 F.3d at 128. While the question of "whether the particular dispute is subject to an arbitration agreement is typically an issue for judicial determination," an exception to that general rule applies if the arbitration agreement "clearly and unmistakably elects to have the resolution of the arbitrability of the dispute decided by the arbitrator." *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019) (citation modified). "[W]here the arbitration agreement is broad and expresses the intent to arbitrate all aspects of all disputes, this—coupled with incorporation of rules that expressly empower an arbitrator to decide issues of arbitrability—constitutes clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to the arbitrator." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 318-19 (2d Cir. 2021).

"Because motions to compel arbitration are governed by a standard similar to that applicable for a motion for summary judgment, a court must draw all reasonable inferences in favor of the non-moving party." *Barrows*, 36 F.4th at 49 (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)) (citation modified). Moreover, where, as here, a plaintiff is proceeding *pro se*, the Court "must take care to construe [his] papers liberally, in deference to [his] *pro se* status." *Brevard v. Credit Suisse*, No. 23-CV-428 (LJL), 2024 WL 36991, at *4 (S.D.N.Y. Jan. 3, 2024) (quoting *Clinton v. Oppenheimer & Co. Inc.*, 824 F. Supp. 2d 476, 481 (S.D.N.Y.

4

2011)); *see also Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988) (stating that courts should afford "special solicitude" to *pro se* litigants "confronted with motions for summary judgment"). The Court "therefore interprets [a *pro se*] Plaintiff's submissions to raise the strongest arguments that they suggest." *Brevard*, 2024 WL 36991 at *4 (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*)) (citation modified). Ultimately, "the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay [is] requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015).

## DISCUSSION

As set forth below, because Plaintiff entered into a valid arbitration agreement with Epiq, and the agreement reserves the issue of arbitrability to the arbitrator, Plaintiff is bound by the agreement and the Court declines to rule on the issue of scope.

### A. The Parties Entered into a Valid Agreement to Arbitrate

"At the outset, the Court must ascertain whether the parties entered into an agreement to arbitrate" under the relevant governing state law, which is New York law.[1] *Brevard*, 2024 WL 36991, at *4 (S.D.N.Y. Jan. 3, 2024) (quoting *Credit Suisse AG v. Graham*, 533 F. Supp. 3d 122, 128 (S.D.N.Y. 2021)) (citation modified). Plaintiff advances several unavailing arguments that the arbitration agreement is invalid.

First, Plaintiff contends that the arbitration agreement before the Court is invalid for lack of mutual assent because Epiq did not sign the agreement. *See* Opp'n at 4. This argument fails.

---

[1] Plaintiff is a New York resident, Am. Compl. ¶ 8, and was employed by Defendant Epiq, Am. Compl. ¶ 10, a business registered in New York, Am. Coml. ¶ 13, at its office in New York, New York, Am. Compl. ¶ 10. By Plaintiff's allegations, Defendant Epiq is a Delaware company with its principal place of business in New York. Am. Compl. ¶ 48. The Arbitration Agreement is "governed by the laws of the State of New York." Arb. Agreement at 4, § 22. Further, Defendants assert that New York law governs, and Plaintiff does not argue otherwise. *See Vincent v. Nat'l Debt Relief LLC*, No. 24-CV-440 (LJL), 2024 WL 3344227, at *5 n.3 (S.D.N.Y. July 8, 2024) (noting courts may presume application of the forum state's choice of law—New York—when no party argued otherwise).

As a general matter, "the FAA requires only that the arbitration agreement be set in writing; it does not require that the writing be signed by the parties." *Gonzalez v. Toscorp Inc.*, No. 97-CV-8158 (LAP), 1999 WL 595632, at *2 (S.D.N.Y. Aug. 5, 1999); *see* 9 U.S.C. § 3. Under New York law, "an arbitration clause in a written agreement is enforceable, even if the agreement is not signed, when it is evident that the parties intended to be bound by the contract." *Pankiv v. Richmond Ctr. for Rehab. & Specialty Healthcare*, 188 A.D.3d 712, 713, 131 N.Y.S.3d 598 (2d Dep't 2020) (quoting *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assoc., LLP,* 6 N.Y.3d 371, 373, 812 N.Y.S.2d 435, 436, 845 N.E.2d 1265, 1266 (2006)) (citation modified); *see also Rightnour v. Tiffany & Co.*, 239 F. Supp. 3d 744, 750 (S.D.N.Y. 2017). "The manifestation or expression of assent necessary to form a contract may be by word, act, or conduct which evinces the intention of the parties to contract." *Pankiv*, 188 A.D.3d 712, 713, 131 N.Y.S.3d 598, 599 (citation modified).

Plaintiff's intent to be bound by the arbitration agreement is not in dispute. Plaintiff signed the arbitration agreement, Arb. Agreement at 5, and thereafter commenced his employment with Epiq. Such employee action is indicative of an intent to be bound by an arbitration agreement under New York law. *See Manigault v. Macy's E., LLC*, 318 F. App'x 6, 8 (2d Cir. 2009) (summary order) (holding that, under New York law, an employee intends to be bound by an arbitration agreement where they continue employment after receiving notice of the agreement). Epiq's intent to be bound by the arbitration agreement is likewise straightforward, although in dispute. Opp'n at 4. Epiq tendered the agreement to Plaintiff for signature. *See* Arb. Agreement at 5. Moreover, the express language of the arbitration agreement signals Epiq's intent to be bound by its provisions, *see* Arb. Agreement at 3-4, §§ 20-21, and Epiq employed Plaintiff for approximately seven years after Plaintiff executed the agreement, Am. Compl. ¶ 10. By continuing

6

to employ Plaintiff for several years following the execution of the arbitration agreement, Epiq acted in a manner demonstrating acceptance of the contractual terms of the arbitration agreement and therefore intended to be bound by its provisions. *See Manigault*, 318 F. App'x at 8 (concluding that parties agreed to arbitrate dispute where employee's continued employment was sufficient to manifest mutual assent). Consequently, the mere fact that Epiq did not sign the arbitration agreement does not render it invalid under state law. *See God's Battalion of Prayer Pentecostal Church, Inc.*, 6 N.Y.3d at 373-74, 812 N.Y.S.2d at 435, 845 N.E.2d at 1266 (affirming "long-standing rule that an arbitration clause in a written agreement is enforceable, even if the agreement is not signed" and that "a signature is not required" to enforce an arbitration agreement); *see also Crawford v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 35 N.Y.2d 291, 299, 319 N.E.2d 408 (1974).

Second, Plaintiff briefly argues that Defendants waived any right to arbitration by participating in administrative proceedings before the NYCCHR on Plaintiff's discrimination claims. *See* Opp'n at 10. This argument is squarely foreclosed by Supreme Court precedent. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28-29 (1991) (holding that arbitration agreements are enforceable notwithstanding the availability of administrative remedies or participation in administrative proceedings).

Third, Plaintiff argues that the arbitration agreement is procedurally unconscionable because it was presented as a condition of employment on a "take-it-or-leave-it" basis. *See* Opp'n at 11. This similarly thin argument has been repeatedly rejected by federal and state courts applying New York law. *See, e.g., American Fam. Life Assurance Co. of N.Y. v. Baker*, 778 F. App'x 24, 27 (2d Cir. 2019) (summary order) (stating that an arbitration agreement is not rendered procedurally unconscionable merely because it was offered on a "take it or leave it basis" under

7

New York law); *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009) (stating that "even if an [a]greement was a form contract offered on a 'take-it-or-leave-it' basis… this is not sufficient under New York law to render the provision procedurally unconscionable"); *Greenwald v. Weisbaum*, 6 Misc. 3d 281, 284 n. 4, 785 N.Y.S.2d 664 (Sup. Ct. 2004) (noting that a contractual agreement "even if given on a 'take it or leave it' basis . . . is not [procedurally] unconscionable"); *Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246, 252, 676 N.Y.S.2d 569 (1998) (affirming lower court's rejection of an argument that an "arbitration clause [was] unenforceable, in that it . . . was a 'take it or leave it' proposition"); *Sablosky v. Edward S. Gordon Co.*, 73 N.Y.2d 133, 139, 535 N.E.2d 643 (1989) (rejecting argument that arbitration clause was procedurally unconscionable and stating that an employer "should be able to protect itself from the delays and costs of extensive litigation by including as a condition of employment an agreement by the employee to arbitrate claims"). In short, Plaintiff is bound by his contractual agreement to arbitrate his dispute with Defendants.

**B. The Issue of Arbitrability is Reserved to the Arbitrator**

As discussed above, broad language in an arbitration agreement reflecting an intent to arbitrate *all* disputes, coupled with the incorporation of rules empowering an arbitrator to decide issues of arbitrability, constitutes clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator. *See DDK Hotels*, 6 F.4th at 318-19. Here, this standard is plainly met because the arbitration agreement clearly and unmistakably delegates questions of arbitrability to an arbitrator.

First, the arbitration agreement incorporates the dispute resolution rules of the AAA then in effect. *See* Arb. Agreement at 3-4, § 20. These rules state that "[t]he arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to the existence,

*scope*, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim."

AAA Employment Arbitration Rules & Mediation Procedures, Rule 7(a) (May 1, 2025) (emphasis

added).  The Second Circuit has repeatedly found that this exact language "explicitly empower[s]

an arbitrator to resolve questions of arbitrability."  *See, e.g.*, *DDK Hotels*, 6 F.4th at 318; *Contec*

*Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005).

Second, the delegation in the arbitration agreement is broad and plainly manifests an intent

to arbitrate all aspects of all disputes.  The arbitration agreement, in all capital letters, expressly

provides for arbitration of "ANY DISPUTE . . . ARISING OUT OF, RELATING TO, OR

CONCERNING ANY INTERPRETATION, CONSTRUCTION, PERFORMANCE, BREACH

OR TERMINATION OF THIS AGREEMENT."  Arb. Agreement at 3, § 20.  Courts in this district

have found such broad language to constitute clear and unmistakable evidence of an agreement to

delegate arbitrability to the arbitrators.  *See, e.g., Indian Harbor Ins. Co. v. Build Group, Inc.*, No.

24-CV-4887 (LAP), 2025 WL 770049, at *4-5 (S.D.N.Y. Mar. 11, 2025) (concluding that "broad

language" of agreement that provided for arbitration of "[a]ny dispute . . . arising under, out of, in

connection with or in relation to" the policy constituted intent to delegate issue of arbitrability);

*DiTella v. TransUnion, LLC*, No. 23-CV-11028 (KPF), 2024 WL 3594567, at *7 (S.D.N.Y. July

31, 2024).

Because "the arbitration agreement is determinative" in resolving issues of "whether the

arbitrability of a dispute is to be resolved by the court or the arbitrator," and the arbitration

agreement here is replete with clear and unmistakable evidence that the parties agreed to delegate

the issue of arbitrability to the arbitrator, *see* Arb. Agreement at 3-4, § 20, the Court defers to the

arbitrator on any such issues and declines to rule on the scope of the arbitration agreement.  *DDK Hotels*, 6 F.4th at 318.[2]

## CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration is GRANTED and this case is STAYED pending the resolution of arbitration.  *See* 9 U.S.C. § 3 (mandating that a court "*shall* on application of one of the parties stay the [case] until such arbitration has been had" if the court is satisfied that the issue involved in the suit is referable to arbitration) (emphasis added); *see also Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019); *Katz,* 794 F.3d at 347. The Parties are directed to file a letter updating the Court on the status of the arbitration in 60 days, provide further update every 60 days, and advise the Court in writing of the outcome of the arbitration within three business days of its completion.

The Clerk of the Court is respectfully directed to close the motion at ECF No. 40 and stay the case.

**SO ORDERED.**

**Date:  July 13, 2026**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**

---

[2] The Court declines Defendants' thinly briefed request to impose sanctions against the *pro se* Plaintiff under Rule 11 or the Court's inherent authority for pursuing this action despite the presence of the arbitration agreement. *See* Mem. at 8-9. Although "Rule 11 permits a court to impose sanctions on a *pro se* litigant who violates Rule 11," Defendants fail to establish that Plaintiff's arguments against arbitration are so patently frivolous, vexatious, or scurrilous to render them meritless. *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 626 (S.D.N.Y. 2016); *see also Maduakolam v. Columbia Univ.,* 866 F.2d 53, 56 (2d Cir. 1989). In declining to impose sanctions, the Court specifically considers "the special circumstances of litigants who are untutored in the law," and the possibility that such a litigant may not have "been warned of the possible imposition of sanctions." *Murawski v. Pataki*, 514 F. Supp. 2d 577, 590 (S.D.N.Y. 2007) (citations omitted).